MEECH and Others *against* THE PHILADELPHIA FIRE AND INLANLD NAVIGATION INSURANCE COMPANY.

Insurance was made, in the sum of $2000, upon the freight of a vessel, at and from *Philadelphia* to *Tampico;* at and from thence to *Laguna* or *Campeachy;* and at and from either to *Philadelphia* or *New York.* By the terms of the charter-party, the charterer bound himself to pay, as the freight or hire of the vessel, during the term of the contract, the sum of $2000, " to become due, owing and payable in manner and form following, viz. on the arrival of the said vessel and delivery of cargo, there shall be due, owing and payable the full and just sum of $1000, payable in Mexican dollars; and on the return of the said vessel to the port of Philadelphia, there shall be due, owing and payable the further sum of $1000; the said two sums making the $2000 before named." *Held,* that this was to be considered an entire contract in reference to the insurance; and, the vessel having been lost on her outward voyage, that the assured were entitled to recover the whole amount insured.

An action of covenant was brought in this Court by A. B. Meech, J. W. Spencer, Horace Meech and H. W. Spencer, trading together under the firm of A. B. Meech & Co., for the use of A. B. Meech & Co. and William Currie, against The Philadelphia Fire and Inland Navigation Insurance Company; and a case was stated for the opinion of the Court, as follows:

" The plaintiffs, A. B. Meech & Co., were owners of the brig Tallahassee, which, on the eighth day of August, 1837, was lying in the port of Philadelphia. They effected with the defendants an insurance of two thousand dollars upon the freight of the said brig " at and from Philadelphia to Tampico ; at and from thence to Laguna or Campeachy ; and at and from either, to Philadelphia or New York;" and paid to the insurers the sum of eighty-one dollars, being four per cent, on the amount insured, and one dollar for the policy. On the 20th of November, 1837, the said A. B. Meech & Co. ordered (by writing) one-half of the loss on this policy to be paid to William Currie, of which the defendant had and accepted notice; (all of which will appear from the original policy, signed and sealed by the defendant, now produced, and from the copy thereof herewith exhibited.) On the 12th day of August, 1837, a charter-party, (a copy of which is hereto appended,) was entered into between the plaintiffs, A. B. Meech & Co., owners of the brig Tallahassee, by their agent, her captain, Edward Walford, and one Edward W. Robinson, whereby the said owners granted, and to freight let, " the said brig, to load at Philadelphia, and to proceed as hereinafter mentioned, to [*474] wit, to sail from Philadelphia to the *port of Tampico, and thence, at the option of the charterer, to Campeachy

or Laguna; thence to Philadelphia or New York." In consideration whereof, (*inter alia,*) the charterer, (Robinson,) did by the said charter-party obligate and bind himself "to pay, or cause to be paid, as a freight or hire of the said vessel, during the term of this contract, the just and full sum of two thousand dollars, to become due, owing and payable, in manner and form following. On the arrival of the said vessel and delivery of cargo, there shall be due, owing and payable, the full and just sum of one thousand dollars, payable in Mexican dollars; and on the return of the said vessel to the port of Philadelphia, there shall be due, owing and payable, the further sum of one thousand dollars; the said two sums making the two thousand dollars before named." The brig Tallahassee sailed from Philadelphia, pursuant to contract, for Tampico, where she never arrived. When off the coast of Mexico, by stress of weather, she was wrecked: a total abandonment took place, of which the defendant received and accepted notice, on the 11th of November, 1837; and the vessel and cargo were sold for the account and benefit of the underwriters. The brig did not reach Tampico, her outward port of destination; and under these facts, the questions presented for decision are, 1st. Was the policy on the freight an open or valued policy? 2nd. What amount are the insured, (the plaintiffs) entitled to receive from the insurers? (the defendants.)"

The policy of insurance upon which the action was brought was dated the 8th day of August, 1837, and is in the usual form. It recited, that "Whereas A. B. Meech & Co., as well in their own names, as for and in the name and names of all and every other person or persons to whom the property hereby insured doth, may or shall appertain, in part, or in the whole, do make insurance, and cause themselves and them, and every one of them, to be insured in the sum of two thousand dollars, lost or not lost, at and from Philadelphia to Tampico; at and from thence to Laguna or Campeachy, and at and from either to Philadelphia or New York, upon the freight of all kinds of lawful goods and merchandizes laden, or to be laden on board of the good brig called the Tallahassee, whereof is master for this present voyage          or whosoever else shall go for master in the said vessel, or by whatsoever name or names the said vessel, or the master thereof is, or shall be named or called. Beginning the adventure upon the freight of the said lawful goods and merchandizes, from and immediately following the loading thereof on board of the said vessel at Philadelphia aforesaid, and so shall continue and endure until the said goods and merchandizes shall be safely landed at Philadelphia or New York aforesaid. And it shall and may be lawful for the said vessel in

(Meech *v.* The Philadelphia Fire, &c., Ins. Co.)

her voyage aforesaid, to proceed and to sail to, touch and stay at any port or places, if thereunto obliged by stress of weather, [*475] *or other unavoidable accident, without prejudice to this insurance. The freight of the said goods and merchandizes, for so much as concerns the assured, by agreement made between the assured and assurers in this policy, shall be valued at —.''

The following memorandum was written on the face of this instrument.

"1837. Nov. 20th.　One-half of the loss on this policy is payable to William Currie.

By order of A. B. Meech & Co.

S. G. WALKER,

Secretary.''

The following is a copy of the charter-party referred to in the case stated.

"This charter party of affreightment, made and concluded on this 12th day of August, in the year one thousand eight hundred and thirty-seven, between Edward Walford, agent of the owners, of the city of New York, in the state of New York, owner of the brig called the Tallahassee, of New York, of the burthen of 130, 81-95 tons, or thereabouts, at present lying in the harbour of Philadelphia, and commanded by Edward Walford, aforesaid, of the one part, and Edward W. Robinson, of the city of Philadelphia, merchant, of the other part, witnesseth, that the said Edward Walford, as agent aforesaid, has and does hereby grant and to freight let, and the said Edward W. Robinson has and does hereby grant and to freight take the whole of the said brig Tallahassee, (deck and cabin excepted,) to load at Philadelphia, and proceed on the voyage as hereinafter mentioned, (always reserving sufficient room for the stowage of the vessel's cables and materials, and accommodation of the officers and crew). And thereupon the said Edward Walford, for himself and his heirs, executors, administrators and assigns, does hereby covenant, grant and agree, to and with the said Edward W. Robinson, his executors, administrators or assigns, that the said brig now is, and shall be kept and maintained, during the whole of the voyage mentioned in this contract, tight, staunch, strong, and well and sufficiently manned, victualled, tackled, apparelled and ballasted, and furnished in every respect fit for merchants' service, at the costs and charges of her owners, and shall forthwith be ready to receive on board, whenever there tendered alongside by the said charterer, his factors or assigns, such goods as he shall order and direct, and the said vessel can conveniently stow and carry : and when laden, shall sail with the first good opportunity of wind and weather then next presenting, from this port of Philadelphia to

(Meech *v.* The Philadelphia Fire, &c., Ins. Co.)

the port of Tampico; and having there discharged her cargo, so laden on board at Philadelphia, proceed at the option of the said charterer, either to Campeachy *or Laguna, and having [*476] there taken on board a return cargo, to be provided by the said charterer or his agents, proceed direct back to the port of Philadelphia or New York; there discharge the same and end the voyage, (the dangers of the seas and navigation, and the restraints of princes and rulers being always excepted;) and that for the purposes of loading and unloading in the several ports or places mentioned in this contract, there shall be allowed

|  |  |  |
|---|---|---|
| In Tampico to discharge | In all ports to discharge and | |
| In Campeachy or Laguna to reload | reload, twenty-five running lay days. | |

The cargo to be discharged and laden according to the established usage of the respective ports.

In consideration whereof, the said Edward W. Robinson, for himself, his heirs, administrators and assigns, hereby binds and obligates himself to employ the said vessel on the voyage aforesaid, and to pay, at his own cost and expense, all port-charges, pilotage and lighterage, (steam, if any,) that may be incurred on the voyage out to Tampico, or any other port used, as well as lighterage in getting over the bar at Tampico, if required by the captain.   And that as a freight or hire of the said vessel, during the term of this contract, he will pay or cause to be paid the full and just sum of two thousand dollars, to become due, owing and payable, in manner and form following: that is to say, on the arrival of the said vessel, and delivery of the cargo, there shall be due and payable the full and just sum of one thousand dollars, payable in Mexican dollars; and on the return of the said vessel to the port of Philadelphia, there shall be due, owing and payable, the further and just sum of one thousand dollars, payable in lawful money of the United States, together with demurrage, (if any shall have occurred,) at the rate of twenty-five dollars per day, for each and every day, daily, which said vessel shall have been detained by default of the said charterer, over and above the number of lay days herein allowed for loading and unloading at the places and ports aforesaid.

To the true and faithful performance of all which several conditions, covenants and agreements, to be done, paid and performed, the said parties bind and oblige themselves, their, and each of their heirs, administrators and assigns, firmly by these presents, (and the said vessel, freight or goods loaden or to be loaden,) each to the other in the penal sum of four thousand dollars, to be paid by the party defective, to the party complying herewith."

The case was argued by Mr. *H. M. Phillips*, and Mr. *Chester*,

476        SUPREME COURT        [*March Term,*

(Woolmer's Estate.)

for the plaintiffs, who cited *Adams* v. *The Penn. Insurance Co.*, (1 Rawle, 97); *Thompson* v. *Taylor*, (6 Term Rep. 478); *Montgomery* v. *Egerton*, (3 Term Rep. 362); 2 Miller's Louisiana Rep. 341; *Horncastle* v. *Stewart*, (7 East, 400); *Davy* v. *Hallet*, (3 Caine's *Rep. 19); *Trescott* v. *Christie*, (2 Brod. & [*477] Bingh. 320); 1 Phillips on Insurance, 52.

No counsel appeared for the defendants.

PER CURIAM.—It is immaterial whether the policy be regarded as valued or open, because the amount to be recovered will be the same. It would seem, however, to be an open one; for it will scarce be thought, that had the outward freight been earned and paid, as it might have been by the terms of the charter-party, it could have been demanded of the defendant. Yet there was but a single voyage for purposes of insurance. It is described as such even in the charter-party, and the freight for it is specified in a gross sum. That part of this sum was to be advanced on performing part of the voyage, may have modified the law of the contract as to earning and payment of it; but it cannot be suffered to divide its very essence, when no division was intended. No part of the freight was earned; and the plaintiffs are entitled to judgment for the sum covenanted to be paid.

Judgment accordingly.